O

# United States District Court
# Central District of California

| | |
|---|---|
| JAVIER CEJA GONZALEZ et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>KRISTI NOEM et al.,<br><br>  Defendants. | Case № 5:25-cv-02054-ODW (ADSx)<br><br>**ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [5]** |

## I.     INTRODUCTION

Petitioners Javier Ceja Gonzalez, Reynaldo Cuervo-Silverio, Mario Francisco Garcia Aguilar, Gregorio Martinez Zamora, Juan Francisco Donis-Mancilla, and Marlon Adilson Velasquez Cinto move the Court *ex parte* for a temporary restraining order requiring, among other things, their release from custody or an individualized bond hearing before an immigration judge.  (TRO, ECF No. 5.)  Respondents Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), Pamela Bondi, U.S. Attorney General, Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"), Ernesto Santacruz, Jr., Acting Director of ICE Los Angeles Field Office, Fereti Semaia, Warden of Adelanto ICE Processing Center, ICE, and DHS oppose the request, (Opp'n, ECF No. 7), and Petitioners replied, (Reply, ECF No. 9).  For the reasons discussed below, the Court **GRANTS** the TRO.

## II. BACKGROUND

Petitioners are foreign nationals currently in physical custody at the Adelanto ICE Processing Center in Adelanto, California. (Pet., ECF No. 1.) Between May 10, 2025, to July 8, 2025, Petitioners were arrested by Homeland Security Investigations ("HSI"), ICE, or Border Patrol agents in Los Angeles County and Orange County. (*Id.* ¶¶ 14–19.)

Pursuant to a new ICE "Interim Guidance Regarding Detention Authority for Applications for Admission" ("New Policy"), "all citizens present within the United States who entered without inspection shall now be deemed 'applicants for admission' under 8 U.S.C. § 1225" and "subject to mandatory detention under § 1225(b)(2)(A)." (*Id.* ¶ 35.) Prior to the New Policy, foreign nationals who were "present without admission" were considered detained under 8 U.S.C. § 1226(a) and received bond hearings. (*Id.* ¶¶ 30–32.) Section 1226(a) of the Immigration and Nationality Act ("INA") allows for release on bond or conditional parole, but § 1225(b)(2)(A) does not. The Immigration Judges ("IJ" or "IJs") in Petitioners' cases adopted the legal analysis set forth in the New Policy and, because Petitioners were each deemed an "applicant for admission," denied Petitioners' requests for bond hearings. (*Id.* ¶¶ 5, 14–19.)

Based on these allegations, on August 7, 2025, Petitioners filed a Petition for Writ of Habeas Corpus on the grounds that their detention violates 8 U.S.C. § 1226(a); the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2); and their Fifth Amendment Right to Due Process. (*Id.* ¶¶ 74–84.) On the same day, Petitioners filed the instant Application for Temporary Restraining Order and Order to Show Cause. (TRO.) Petitioners request that this Court (1) order Respondents to release Petitioners or provide them with individualized bond hearings before an IJ, (2) enjoin Respondents from relocating Petitioners outside of the Central District of California pending resolution of this matter, and (3) order Respondents to show cause why a preliminary injunction should not issue. (*Id.* at 2.)

### III. LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

Courts in the Ninth Circuit evaluate the *Winter* factors on a sliding scale: "serious questions going to the merits . . . and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

### IV. DISCUSSION

The Court first considers whether it has jurisdiction over this matter, then turns to the *Winter* factors.

**A.   Jurisdiction**

Respondents contend that 8 U.S.C. § 1252(b)(9) and (g) deprive this Court of jurisdiction over Petitioners' claims. (Opp'n 5–9.) The Court addresses each subsection in turn.

1. *Section 1252(b)(9)*

Section 1252(b)(9) provides that

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Respondents rely on *Jennings v. Rodriguez*, 583 U.S. 281 (2018) as guidance and argue that § 1252(b)(9) bars jurisdictional review here because Petitioners challenge the government's decision and action to detain them. (Opp'n 8–9.)

In *Jennings*, the IJ found the plaintiff removable and ordered him to be deported to Mexico. 58 U.S. at 290. After the Board of Immigration Appeals ("BIA") denied his appeal, the plaintiff petitioned the Ninth Circuit for review of the BIA's decision. *Id.* The plaintiff then filed a habeas petition with the district court seeking a bond hearing before an immigration judge, which was later consolidated with a similar case and granted class certification. *Id.* at 290–92. The district court subsequently entered a preliminary injunction requiring that the class be provided individual hearings before an immigration judge, and the Ninth Circuit affirmed in part. *Id.* at 291–92.

In determining the applicability of § 1252(b)(9) on review, the Supreme Court considered if "the question of law"—whether statutory provisions require detention without a bond hearing—"arises from" actions taken to remove the plaintiff. *Id.* at 292–93. Without addressing the scope of § 1252(b)(9), the Supreme Court declined to expansively interpret "arising from" and noted that an extreme interpretation of "arising from" would "make claims of prolonged detention effectively unreviewable." *Id.* at 293. The Supreme Court held that § 1252(b)(9) did not present a jurisdictional bar under the circumstances there because the plaintiff did not "ask for review of an

4

order of removal; challenge the decision to detain them in the first place or to seek removal; or challenge any part of the process by which their removability will be determined." *Id.* at 294–95 (cleaned up).

Contrary to Respondents' assertion, Petitioners do not challenge an order of removal, the decision to detain them in the first place, or any determination of their removability. Like in *Jennings*, Petitioners raise a "question of law" as to whether "statutory provisions require detention without a bond hearing." *Id.* at 292–93. Specifically, Petitioners contend that their detention is subject to the provisions of § 1226(a), not § 1225(b)(2), and their continued detention without a bond hearing violates § 1226(a). (*See* Pet. ¶¶ 75–76; Reply 6–7.) Accordingly, as Petitioners' claims do not "arise from" removal proceedings, § 1252(b)(9) does not present a jurisdictional bar to Petitioners' claims.

2. *Section 1252(g)*

Section 1252(g) provides that

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Respondents argue that Petitioners' claims stem from their detention during removal proceedings and § 1252(g) "bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security chooses to commence removal proceedings, including the decision to detain an alien pending removal." (Opp'n 5.) This argument requires the Court to accept a broad interpretation of § 1252(g) which the Supreme Court has rejected.

The Supreme Court has applied a "much narrower" application of § 1252(g), applying it to only "three discrete actions that the Attorney General may take: her

'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (9th Cir. 1999). This language "refer[s] to just those three specific actions themselves," *Jennings*, 583 U.S. at 294 (citing *Reno*, 525 U.S. at 482–83), and is "clearly designed to give some measure of protection to . . . discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed," *Reno*, 525 U.S. at 485. As such, "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485 n.9. The Ninth Circuit has held that "the district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority." *U.S. v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).

Here, Petitioners raise a question of law as to whether their detention falls under the statutory provision of § 1226(a) or § 1225(b)(2). This is not a challenge to the Attorney General's discretionary authority to commence, adjudicate, or execute removal proceedings. Therefore, § 1252(g) does not present a jurisdictional bar to Petitioners' claims.

**B.** ***Winter* Factors**

Having determined that the Court has jurisdiction over Petitioners' TRO Application, the Court turns to the *Winter* factors.

*1.    Likelihood of Success on the Merits*

Petitioners contend that § 1226(a), not § 1225(b)(2), governs their detention. (TRO 6.) Respondents argue that § 1225(b)(2) governs because it applies to the narrower category of "applicants for admission," and Petitioners are "applicants for admission" because they are present in the United States without having been admitted. (Opp'n 9–10.)

a) <u>Statutory Text</u>

First, the plain text of § 1226(a) does not support Respondents' contention that § 1225 governs over the general authority found at § 1226 to aliens present in the United States who have not been admitted. (*Id.* at 9.) Section 1226(a) provides that

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole . . . .

"§ 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. Excepting criminal aliens under subsection (c), § 1226(a)(2) permits detained aliens to be released on bond or conditional parole. Under subsection (c)(1)(E), aliens present in the United States without admission or parole *and* charged with criminal offenses are subject to mandatory detention. If Respondents are correct that Congress meant for § 1225 to govern all aliens present in the United States who had not been admitted, it would render the exception made under § 1226(c)(1)(E) unnecessary. This does not stand to reason for, as Respondents aptly note, "a statute should be construed so that effect is given to all its provisions." (Opp'n 11 (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)).)

Second, Petitioners contend that the plain text of § 1225(b) shows that Congress did not intend that section to apply to individuals like Petitioners, who have already entered into and reside in the United States. (TRO 11.) Looking to the statutory language, § 1225(b) applies to "Inspection of applicants for admission" and subsection (1) concerns "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." Section 1225(b)(2)(A) applies

1  to "Inspection of other aliens" and provides that "if the examining immigration officer
2  determines that an alien seeking admission is not clearly and beyond a doubt entitled
3  to be admitted, the alien shall be detained . . . ."  Section 1225(b)(2)(B)–(C) also refers
4  to various methods of entry, such as an alien arriving on land or arriving as "a
5  crewman" or "a stowaway."  Based on this language, Petitioners contend that
6  § 1225(b)(2)(A) applies only to those "applicants for admission" who take an
7  affirmative act of "seeking admission" by applying for admission or being subject to
8  examination by an immigration officer.  (TRO 11–12.)

9  Respondents argue that "applicants for admission" who are present without
10 admission and who arrive in the United States should automatically be understood to
11 be seeking admission.  (Opp'n 10.)  But Respondents fail to present persuasive legal
12 authority on this point.

13 Respondents rely on the BIA's decision in *Matter of Lemus-Losa*, 25 I. & N.
14 Dec. 734 (BIA 2012).  In *Matter of Lemus-Losa*, the BIA determined that "many
15 people who are not *actually* requesting permission to enter the United States in the
16 ordinary sense are nevertheless deemed to be 'seeking admission' under the
17 immigration laws."  This discussion was in the context of 8 U.S.C. § 1882(9)(B)(i)(II),
18 which deemed an alien outside of the United States who "again seeks admission"
19 following prior unlawful presence to be inadmissible.  The BIA clarified that in some
20 cases, such alien "will have reentered the United States unlawfully, thereby making
21 himself an 'applicant for admission' by operation of law, while seeking 'admission'
22 through adjustment of status."  *Matter of Lemus-Losa*, 25 I. & N. Dec. at 744.  The
23 BIA's example indicates that being an "applicant for admission," alone, does not
24 automatically mean an alien is "seeking admission."  Rather, it appears, based on the
25 BIA's example, that the further step of *applying* for adjudication of status is the act of
26 "seeking admission" that triggers § 1225(b)(2)(A).

27 Respondents also rely on *Florida v. United Sates*, 660 F. Supp 3d 1239
28 (N.D. Fla. 2023) and argue that 8 U.S.C. § 1225(b) mandates detention of applicants

for admission throughout removal proceedings. (Opp'n 11.) However, *Florida* considered whether the DHS may first apprehend an alien crossing the Southwest Border under § 1225(b) and later release the individual under § 1226(a). 600 F. Supp 3d at 1277. That is not the question here. Further, the *Florida* court noted the distinction that § 1226(a) applied to "certain aliens *already in the country*" while § 1225(b) "include[s] illegal border crossers." *Id.* at 1275. The *Florida* court also cited to the Ninth Circuit's holding in *Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1116 (9th Cir. 2007), "that an alien who was apprehended within the interior of the United States necessarily must have been paroled under § 1226(a), not § 1182(d)(5)(A), because he was not apprehended at the border as a § 1225 arriving alien." 660 F. Supp 3d at 1275.

    b)  <u>Exhaustion</u>

Respondents argue that Petitioners must first exhaust administrative review before they can seek judicial intervention. (Opp'n 14.)

The doctrine of exhaustion provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed . . . remedy has been exhausted." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (alteration in original). "If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* Here, Respondents do not argue that there is a statutory requirement for exhaustion of administrative remedies. (*See generally* Opp'n.) Thus, the Court considers whether exhaustion is required here as a prudential matter.

In deciding whether prudential exhaustion is required, courts in the Ninth Circuit consider whether (1) "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision," (2) "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme," (3) "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874,

881 (9th Cir. 2003). Respondents argue that BIA expertise is needed here, as the BIA is "the subject-matter expert in immigration bond decisions" and "well-positioned to assess how agency practice affects the interplay between 8 U.S.C. § 1225 and 1226." (Opp'n 14.)

The circumstances in this case do not present a need for prudential exhaustion. First, agency expertise is not necessary. The question here involves the statutory interpretation presented in the New Policy and is a question of law as to whether § 1225(b)(2) or § 1226(a) applies to Petitioners. The BIA has adopted the statutory interpretation that Petitioners challenge. (Pet. ¶ 36.) As the BIA's interpretation is being challenge, the Court does not need its expertise to reach a proper decision and can, as Respondents note, "independently interpret the statute." (Opp'n 13.) Second, excusing exhaustion here would not encourage the deliberate bypass of the administrative scheme. Petitioners alleges that ICE, BIA, and EOIR have adopted the New Policy's legal interpretation and "rejected the well-established understanding of the statutory framework and reversed decades of practice." (Pet. ¶¶ 34–37.) As the agency's interpretation is being challenged, the district courts may be able to provide better clarity by resolving this question of law. For the same reason, it is unlikely that administrative review would allow the agency to correct its own mistakes. As Petitioner argue, administrative review would be futile and may "force [them] to endure they very harm they are seeking to avoid." (TRO 18.) Accordingly, the Court exercises its discretion to waive exhaustion of administrative remedies.

In sum and as discussed above, Petitioners demonstrate a likelihood of success on the merits.

2. *Likelihood of Irreparable Harm*

Petitioners contend that they will suffer irreparable harm in the absence of a TRO as they will continue to be detained without a bond hearing and be deprived of their Due Process rights. (TRO 16.) "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendez v.*

*Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Respondents argue that Petitioners have not established irreparable harm because they can appeal to BIA. (Opp'n 17.) As previously discussed, the BIA has adopted the New Policy's statutory interpretation so an appeal with BIA will subject Petitioners to continue suffering the harm they seek to avoid. Accordingly, Petitioners demonstrate that continued detention without a bond hearing is likely to result in irreparable injury.

### 3. Balance of Equities and Public Interest

The last two *Winters* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioners contend that a TRO is in the public interest because they challenge the New Policy for violating federal laws and Respondents cannot be harmed by being required to end an unlawful practice. (TRO 17–18.) Respondents argue that they have a compelling interest in allowing BIA to speak on the issue, as the BIA has an "'institutional interest' to protect its 'administrative agency authority.'" (Opp'n 17–18.) As discussed above, the dispute here involves a "question of law" challenging the New Policy's statutory interpretation, which the BIA has adopted. Accordingly, to the extent that the BIA's adopted statutory interpretation deprives Petitioners of their constitutional rights and violates federal law, "it is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). Accordingly, the last two *Winters* factors weigh in favor of an injunction.

## V. CONCLUSION

For the reasons discussed above, the Court finds that all four *Winters* factors weigh in favor of a TRO. Accordingly, the Court **GRANTS** the TRO. (ECF No. 5.) It is hereby **ORDERED** that:

- Respondents shall release Petitioners or, in the alternative, provide each Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of this Order;
- Respondents are enjoined from relocating Petitioners outside of the Central District of California pending final resolution of this case; and
- Respondents shall show cause in writing by no later than **August 18, 2025** as to why the Court should not issue a preliminary injunction in this case. Petitioners may file a reply by **August 21, 2025**. The Court **SETS** a hearing on the preliminary injunction on **August 26, 2025, at 10:00 a.m.**, via Zoom.

**IT IS SO ORDERED.**

August 13, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**